UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-8059-CR-DTKH

S.D. OF FLA. - WPB

IN RE: RICHARD A. SHARPSTEIN
____________________________/

**AFFIDAVIT OF RICHARD A. SHARPSTEIN IN SUPPORT OF MEMORANDUM**

STATE OF FLORIDA )
) ss:
COUNTY OF MIAMI-DADE )

BEFORE ME, the undersigned authority, personally appeared RICHARD A. SHARPSTEIN, who being by me first duly sworn, deposes and states that:

1. I was trial counsel for Defendant Yaron Tishby in Case No. 99-6062-CR-HURLEY pending in the United States District Court, Southern District of Florida, and I have personal knowledge of the matters set forth herein.

2. I was assisted in the representation of Mr. Tishby by my very able and experienced Associate, Ada M. Avallone, who has practiced criminal law in my law firm for more than eight years. Indeed, Ms. Avallone researched, conceptualized, wrote, signed, and filed (on February 15, 2000) Defendant Yaron Tishby's Sentencing Memorandum and Motion for Specific Performance of Plea Agreement, which addressed the "open" issue to be considered at the April 7 continuation of the January 21st sentencing hearing. I have, and had, every confidence in Ms. Avallone's ability to handle this hearing.

3. I am married and have three children. The third child, Michael, is thirteen years old and attends Ransom Everglades School. The School sets the dates for the students' Spring Break, and that schedule can not be altered or amended by the parents.

7

4. Like other fathers who are criminal trial lawyers, I find it hard to secure "quality time" alone with my son, but I do believe such time is a crucial part of maintaining sound family values. To this end, I committed to spend his Spring Break with my son Michael, on a trip that just the two of us could enjoy together.

5. Also, like other too-busy fathers, I did not keep in mind the dates of the Spring Break vacation. In part, this was because of my hectic and demanding trial practice, and in part because the schedule is set by the School, without any possible input from parents, at a point remote in time. I acknowledge I forgot the timing, but not the importance, of my commitment to my son. This Court may be willing to take judicial notice of the challenges parents face in rasing their children in urban South Florida.

6. Mr. Tishby decided to plead guilty and cooperate with the prosecution of this action. His sentencing was initially set for November 19, 1999, but it was continued for valid reasons embodied in a series of motions granted by this Court.

7. All but one of these Motions were filed eleven or fewer days prior to the sentencing date. The Motions were granted on several occasions within a day or two of the scheduled hearing. One Motion was granted to accommodate the Assistant United States Attorney's prepaid vacation.

8. The Sentencing Hearing was held January 21, 2000. Essentially all of the contested issues were addressed and resolved at that hearing except the issues subsequently addressed in Ms. Avallone's memorandum of law filed February 15, 2000.

9. This Court continued this remaining issue until February 18, 2000, but the prosecution had a conflict with that time period, and so did I, so a Joint Motion for Continuance was filed eight days before the hearing date. This Court granted that motion one day before the hearing.

10. This Court unilaterally reset the hearing for April 7, 2000. At the time I received this Order I did not realize it would create any conflict for me.

11. In mid-March I became aware of the fact that April 7 was during Spring Break As soon as I realized that fact, I served my Motion for Continuance, March 24, 2000, about two weeks prior to the hearing, and I note that the Motion is filed-stamped March 28th, eleven days prior to the hearing date.

12. I had no doubt the Motion would be granted. It had been timely filed. A similar motion had been granted the prosecutor. I truly believed the hearing would be easily rescheduled because I expected it to be of relatively brief duration, and would not require a large bloc of this Court's time, (and the transcript, which covers only sixty-nine pages, even with the extraneous contempt issue being addressed, bears this out). All of the major disputed issues, save one, had been decided in the prior sentencing hearing. The Defendant remained in custody, and third party witnesses would not be inconvenienced. The government did not object to the continuance, nor did I anticipate the prosecutor opposing the position set forth in our memorandum. But most important, I believed that the grounds for my Motion, to spend "quality time" with my adolescent son during his Spring Break, would be embraced by this Court, given the Court's obvious and evident commitment to protect family values. (*See, e.g.,* April 12 Transcript at p. 47). I had a good faith belief and confidence my Motion would be granted.

13. On Saturday, April 1, 2000 I flew to Utah with my son for Spring Break. We stayed at a ski lodge in the Utah mountains, more than 2500 miles from Miami.

14. On Wednesday night, April 5, I first became aware that this Court had denied the Motion for continuance that same day. I did not leave for Spring Break with my son <u>after</u> the

Motion had been denied, but rather five days before it was denied.

15. I did not believe I was obligated to personally appear on April 7, 2000 because the denial of the continuance simply meant that the hearing would go forward. There was no order directing me personally to appear to handle it.

16. Given the extremely unlikely prospect, that I would be able to obtain two airline tickets at a time when overbooking of flights from the ski resorts was endemic, and the obvious hardship of attempting to leave the Utah mountains on April 6 to return to West Palm, and prepare for a 2:00 p.m. hearing on April 7, I spoke with my associate and instructed her to meet with the client Mr. Tishby, and cover the hearing. I had no reason to believe Ms. Avallone could not perform this task, or that Mr. Tishby would object, particularly since it was Ms. Avallone who had researched and briefed the issue to be heard.

17. When Mr. Tishby met with Ms. Avallone, he stated that he did not want to go forward with the hearing because he wanted new counsel Mr. Weintraub, not myself. Indeed, Mr. Tishby made it clear at the April 12 hearing that he had wanted a continuance of the April 7 hearing to be represented by Mr. Weintraub, not me. (April 12 transcript at p. 52). My absence was not the cause of Mr. Tishby's request that the April 7 hearing not go forward, although he was not able to make that clear at that time.

18. I never expected, and had no reason to expect, that Mr. Tishby would not allow Ms. Avallone to go forward with the hearing.

19. In sum, I do not believe any Order was entered that directed me to personally appear on April 7th. I did not violate an Order; and, I certainly did not act with willful contempt toward this Court. Indeed, the charge is ironic because I acted in reliance upon, and put my good faith trust in

this Court to grant my motion, so that I would keep a family commitment that was of fundamental importance to me as it would be to any other father.

Richard A. Sharpstein

Personally known to me √
Produced Identification ___
Type__________________

SWORN TO AND SUBSCRIBED
before me this 18 day of May, 2000.

NOTARY PUBLIC
State of Florida

My Commission Expires:

GISELLE T. ALVAREZ
MY COMMISSION # CC 778836
EXPIRES: September 28, 2002
Bonded Thru Notary Public Underwriters